THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 v.
 Christopher Lee
 Pride, Appellant.
 
 
 

Appeal From Union County
 John C. Hayes, III, Circuit Court Judge
Unpublished Opinion No. 2007-UP-544
Heard August 24, 2007  Filed December 5,
 2007
Formerly Opinion No. 4208
Submitted January 1, 2007  Filed February
 20, 2007
Withdrawn, Substituted, and Refiled
 December 5, 2007
AFFIRMED

 
 
 
 Appellate Defender Robert M. Dudek, of Columbia, Fletcher N.
 Smith, Jr., of Greenville, for Appellant.
 Attorney General Henry Dargan McMaster, Chief Deputy Attorney
 General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior
 Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor
 Thomas E. Pope, of Rock Hill, for Respondent.
 
 
 

BEATTY,
 J.:  Christopher Lee Pride was tried in absentia and without counsel for
 the charges of possession of crack cocaine with intent to distribute and
 possession of crack cocaine with intent to distribute within the proximity of a
 school.  After the jury convicted Pride of both offenses, the circuit court
 judge issued a sealed sentence.  Pride appeals, arguing the circuit court judge
 erred in finding he waived his right to counsel.  We affirm.
The panel of this Court affirmed Prides convictions
 in a published opinion.  State v. Pride, 372 S.C. 443, 641 S.E.2d 921 (Ct. App. 2007).  Subsequently, the panel granted Prides petition for rehearing and request
 for oral argument.  We now withdraw our previous opinion and substitute the
 attached opinion. 
FACTS
As a result of an on-going narcotics
 investigation, detectives with the Union Police Department identified Pride as
 a crack cocaine dealer.  On the morning of April 2, 2003, detectives went to
 Prides residence and served him with a search warrant.  Upon entering the
 residence, Detective Brian Bailey read Pride his Miranda[1] rights.  Bailey then questioned Pride
 as to whether there were any illegal drugs in the house.  According to Bailey,
 Pride admitted there were illegal drugs in the house and there was a bag of
 crack cocaine in his blue jeans which were located in his bedroom.  While
 conducting a search of the area identified by Pride, the detectives found
 $1,875 in cash and a bag containing 3.62 grams of crack cocaine.  Detectives then
 placed Pride under arrest and transported him to the police station.  Pride
 gave a written statement in which he confessed to dealing crack cocaine and
 acknowledged the result of the detectives search of his residence.  Subsequently,
 a Union County grand jury indicted Pride for possession of crack cocaine with
 intent to distribute (PWID) and PWID within proximity of a school.
On October 13, 2004, Prides case was
 called for trial.  Although Pride was not present, William All, the public
 defender assigned to his case, appeared in court.  When the circuit
 court judge inquired about Prides absence All outlined the history of his
 representation of Pride.  All was initially appointed to represent Pride on two
 other drug charges.  After Pride was arrested on a bench warrant, he retained
 Fletcher Smith, a private attorney.  All explained that he was again appointed
 to represent Pride on September 13, 2004, the first day of the term of court
 for which Pride was originally scheduled to go to trial.  On that day, Pride
 was still represented by Smith.  The circuit court judge, however, granted Smiths
 motion to be relieved and informed Pride that he needed to retain an
 attorney.  Because Pride qualified for the public defenders office, All was again
 appointed to his case.  
Pride
 failed to appear for two scheduled appointments with All.  Each time, Pride
 informed All that he could not attend the appointments because of his work
 schedule.  After the two missed appointments, All sent Pride a letter on
 October 1, 2004, indicating that his trial was scheduled for the week of
 October 11, 2004, and that he could not adequately represent him without
 speaking with him.  Additionally, All asked Pride to advise him if he had
 retained private counsel.  In response, Pride scheduled another appointment for
 October 7th.  Pride again failed to appear for this appointment and offered no
 explanation.    
On
 October 11th, Pride went to the Union County courthouse to report for roll call
 and was arrested for a driving under suspension charge.  When officers searched
 Prides person, they discovered $5,000 in his pocket.  While in custody, law
 enforcement transported Pride to the courthouse so that he could speak with
 All.  At that time, Pride told All that Smith was again representing him and
 that he had sent some money to Smith.  Pride also claimed that he had intended
 to give Smith the $5,000 after he reported for roll call.  Later that evening,
 Pride was released from custody.  The next morning at the courthouse, All told
 Pride that Smith needed to come to the courthouse to review the pre-trial
 motions that the solicitor intended to use during his case.  According to All,
 Pride indicated that Smith would come to the courthouse.  All then contacted
 Smiths office in the afternoon and discussed the matter with Smiths
 administrative assistant.  The administrative assistant informed All that Pride
 had attempted to pay $250 for Smiths representation.  In response, All stated
 that Pride had indicated to him that he had $5,000 for Smith.  Although Smiths
 administrative assistant stated that she would contact Pride about payment and
 then call All back, she did not contact All and there is no evidence in the
 record of an agreement by Smith to represent Pride.  On the morning of trial,
 the solicitor contacted All and told him that Smiths office had informed him
 that Smith did not represent Pride.  
Upon
 hearing this factual recitation, the solicitor moved to have Pride tried in his
 absence.  The circuit court judge then inquired whether All wished to make a
 motion to be relieved as counsel.  Although All was hesitant to make the motion
 out of an ethical obligation to his client, he made the motion which was
 granted by the judge.  In so ruling, the judge found that Pride waived his
 right to counsel by his conduct.  In explaining his ruling, the judge believed
 that Pride was sort of playing the attorney game so to speak and saying
 somebody represents him and they say they dont.  Pride was then tried and
 convicted for the drug offenses.  After the jury returned a verdict, the judge
 issued a sealed sentence.  
On January 18, 2005, Pride appeared in
 court to be sentenced.  Pride admitted that he did not have an attorney for the
 sentencing hearing.  All appeared at the hearing and again explained his
 history of representing Pride.  He indicated that he could perfect an appeal
 for [Pride] if he wants to raise the issue of whether or not he shouldnt have
 been tried in his absence.  All indicated that he would move for appellate
 defense to represent Pride in his appeal.  The judge then asked All to stand
 with Pride as he imposed the sentence.  The judge sentenced Pride to
 twenty-five years imprisonment and a $50,000 fine for PWID and fifteen years imprisonment
 and a $10,000 fine for PWID within proximity of a school.  The sentences were
 to be served concurrently.  This appeal followed.    
DISCUSSION
Pride
 argues the circuit court judge erred in relieving All as his counsel and
 proceeding with the trial in his absence.  He contends his conduct was not
 sufficient to establish that he waived his right to counsel.[2]
As a
 threshold matter, we initially question whether Pride adequately preserved this
 issue for our review.  Although Prides lack of trial representation was
 discussed at his sentencing hearing, Pride never moved for a new trial on the
 ground that he did not knowingly waive his right to counsel.  See State
 v. Williams, 303 S.C. 410, 411, 401 S.E.2d 168, 169 (1991)(holding
 defendant, who was tried and convicted in his absence without counsel, failed
 to preserve issue of whether he waived his right to trial counsel where neither
 he nor his sentencing attorney raised this issue to the circuit court); cf. State v. White, 305 S.C. 455, 456, 409 S.E.2d 397, 397 (1991) (finding
 defendant, who was tried and convicted in his absence without counsel and
 appeared pro se at the sentencing hearing, could raise the issue
 of whether he waived his right to trial counsel because defendants first
 opportunity to raise the issue was on appeal).      
Assuming
 the general discussion during the sentencing hearing was sufficient to preserve
 this issue, we find the circuit court judge correctly found Pride waived his
 right to counsel by his conduct.    
The
 Sixth Amendment guarantees criminal defendants a right to counsel.  This right
 may be waived. State v. Gill, 355 S.C. 234, 243, 584 S.E.2d 432, 437
 (Ct. App. 2003)(citations omitted).  This court has explained that [a]
 defendant may surrender his right to counsel through (1) waiver by affirmative,
 verbal request; (2) waiver by conduct; and (3) forfeiture.  State v. Thompson,
 355 S.C. 255, 262, 584 S.E.2d 131, 134 (Ct. App. 2003).  
In support of his argument, Pride appropriately relies on our
 decision in State v. Thompson, 355 S.C. 255, 584 S.E.2d 131 (Ct. App. 2003).  However, as will be more fully discussed, neither Thompson nor our
 more recent case of State v. Roberson, 371 S.C. 334, 638 S.E.2d 93 (Ct.
 App. 2006), cert. granted (Oct. 19, 2007), require reversal of Prides
 convictions and sentences. 
In Thompson, the defendant was tried in absentia and
 without counsel for the offenses of discharging a firearm into a dwelling and
 malicious injury to personal property over $1,000 but less than $5,000.  After
 the jury convicted Thompson, the judge issued a sealed sentence.  At
 sentencing, Thompsons counsel moved for a new trial because he was denied the
 right to counsel.  Counsel claimed that Thompson had appeared at four or five
 roll calls after his arrest.  Additionally, counsel alleged that Thompson,
 despite his request, had been turned down for a public defender because he did
 not meet the financial requirements to qualify.  In terms of Thompsons failure
 to appear at trial, his counsel informed the court that Thompson was not given
 adequate notice of the trial date.  Thompson, 355 S.C. at 260, 584
 S.E.2d at 133.  The court denied Thompsons motion for a new trial.  Id. at 260, 584 S.E.2d at 134.  On appeal, this court reversed the decision of the
 circuit court.  We held that Thompsons failure to appear at trial did not rise
 to the level of waiver.  Id. at 266, 584 S.E.2d at 136.  Our decision
 was based on the following factors:  (1) Thompson had not been advised of the
 dangers and disadvantages of self-representation under Faretta; (2)
 there was no inference in the record that Thompson understood the dangers and
 disadvantages of self-representation; and (3) Thompson did not have a prior
 record which would have familiarized him with the criminal court system.  Id. at 267, 584 S.E.2d at 137.
Recently,
 this court had the opportunity to apply Thompson in reaching its
 decision in State v. Roberson, 371 S.C. 334, 638 S.E.2d 93 (Ct. App.
 2006), cert. granted (Oct. 19, 2007).  In Roberson, the defendant
 was arrested and then released on bond for failing to register as a sex
 offender.  The terms of the bond required the defendant to appear for roll call
 at the term of general sessions court in Dorchester County beginning on
 November 29, 1999.  By signing the bond, the defendant acknowledged that he
 would be tried in his absence if he failed to appear in court.  The Dorchester
 County Solicitors office mailed to the defendants last known address two
 notices of appearances for the terms of court scheduled for November 29, 1999,
 and January 10, 2000.  On February 16, 2000, the defendant was tried in his absence
 without counsel.  After the jury convicted the defendant, the circuit court
 judge issued a sealed sentence.  
Approximately
 three years later, the defendant, who was represented by counsel, appeared
 before the circuit court to be sentenced.  During this hearing, the defendants
 counsel moved for a new trial on the grounds the defendant did not knowingly
 and voluntarily fail to appear for his trial and he was denied his right to be
 represented by counsel at trial.  Because it was unclear whether the defendant
 had been represented at trial, the judge continued the motion until a trial
 transcript could be located.  At the final hearing, the defendants counsel
 moved to vacate the defendants conviction and sentence primarily on the ground
 that he was not represented by counsel at trial.  In response, the solicitor
 asserted the defendant waived his right to counsel by failing to appear and
 that he was apprised of his right to counsel at the bond hearing.  The judge
 denied the motion for a new trial finding the defendant waived his right to
 counsel because the terms of his bond indicated that he would be tried in his
 absence if he failed to appear and he had been informed of his right to counsel
 at the bond hearing.  Roberson, 371 S.C. at 337, 638 S.E.2d at 94.
On
 appeal, we reversed the circuit court judges decision and remanded for a new
 trial.  Roberson, 371 S.C. at 339, 638 S.E.2d at 96.  Applying Thompson,
 we found the defendants failure to appear at trial did not constitute an
 affirmative waiver of his right to counsel.  Moreover, because the defendant
 was never advised of proceeding without representation, we declined to infer
 that the defendants conduct, i.e., his failure to appear at trial,
 constituted a waiver of his right to counsel.  Id. at 339, 638 S.E.2d at
 95.
Although
 a cursory reading of above-outlined cases would appear to warrant a reversal of
 Prides convictions and sentences, upon closer review we find a crucial
 difference between the facts in Prides case and those of Thompson and Roberson. 
 Significantly, unlike Pride, the defendants in Thompson and Roberson were not represented by counsel until the sentencing hearing.   Thus, the
 finding that the defendants in Thompson and Roberson waived their
 right to trial counsel was based solely on their failure to appear for trial. 
 Here, Pride not only failed to appear for trial but he also failed to cooperate
 with his appointed counsel and knowingly attempted to manipulate the court
 system.  Pride was represented by appointed counsel and given additional time
 to prepare for trial after his private attorney was relieved.  Pride repeatedly
 failed to appear for his scheduled appointments with the public defender or
 offer any assistance in preparation for his defense.  Pride essentially fired
 his appointed attorney by assuring him up to the day before trial that Smith
 was representing him and he had sent Smith money to retain him as counsel. 
 Pride, however, was aware that Smith had not agreed to represent him.  Despite
 this knowledge and his awareness of the trial date, Pride failed to cooperate
 with his appointed counsel and failed to retain a private attorney by the date
 of the scheduled trial.  Furthermore, there is evidence in the record that
 someone had seen Pride in the courthouse shortly before the case was called for
 trial.  Yet, Pride refused to show up for trial apparently because he was
 represented by appointed counsel rather than counsel of his own choosing.  Based
 on the foregoing, we find Prides deliberate, dilatory, and manipulative
 conduct was sufficient to waive his right to counsel.  
Additionally,
 we reject Prides contention that his convictions should be reversed because
 the trial judge failed to admonish him regarding the dangers and disadvantages of
 self-representation pursuant to Faretta v. California, 422 U.S. 806
 (1975).  In Faretta, the United States Supreme Court ruled that a
 defendant in a state criminal trial has a constitutional right to proceed
 without counsel when he voluntarily and intelligently elects to do so.  Faretta,
 422 U.S. at 835.  Faretta, however, is inapposite to the facts of the
 instant case.  At no point did Pride indicate that he wanted to represent
 himself.  Instead, he consistently communicated to the court and his
 court-appointed attorney that he wanted to retain a private attorney.  See,
 e.g., Robards v. Rees, 789 F.2d 379, 383 (6th Cir. 1986) (noting
 exception to application of Faretta where prosecution makes an
 affirmative showing that the defendants request for self-representation is
 merely a tactic to secure a delay in the proceeding); State v. Jones,
 546 P.2d 45, 51 (Ariz. Ct. App. 1976) (finding Faretta was not
 controlling where defendant did not request that he be permitted to represent
 himself but, instead, requested on the day of trial that his present attorney
 be fired and that a new one be appointed); State v. Shumaker, 914 So. 2d
 1156, 1162 (La. Ct. App. 2005) (holding defendants reliance on Faretta,
 was misplaced and stating defendant never expressly asked that he be allowed
 self-representation.  He simply indicated that he wanted to fire his counsel. 
 That statement certainly does not reach a clear and unequivocal expression
 requesting the right to represent oneself as required by Faretta.).
We find
 support for our decision in a recent case issued by the Indiana Supreme Court.  Jackson v. State, 868 N.E.2d 494 (Ind. 2007).  In Jackson, the defendant was charged with possession of cocaine with intent to
 deliver and possession of a handgun without a license.  An attorney admitted in
 Indiana filed Jacksons preliminary motions.  At subsequent hearings, the
 defendant appeared with counsel who was admitted to the state pro hac vice.  At
 a final pre-trial conference, the defendant appeared without an attorney. 
 Because the defense had not complied with the States pre-trial discovery
 requests, the trial judge revoked Jacksons attorneys pro hac vice status. 
 The initial Indiana attorney remained Jacksons attorney of record. 
 Approximately one week before trial, Jackson and his attorney appeared for a
 hearing and informed the trial judge that Jackson intended to retain new
 counsel.  Based on this information, the trial judge granted Jacksons motion
 to continue his trial for several months.  Neither Jackson nor any defense
 attorney appeared for two pretrial conferences.  After a bench warrant was
 issued for Jacksons arrest, the State moved to proceed with the trial in Jacksons absence.  Ultimately, Jackson was tried and convicted in absentia and without
 counsel.  On appeal, the Indiana Court of Appeals reversed Jacksons
 convictions and remanded for a new trial.  The Indiana Supreme Court affirmed
 the trial judge, stating:

 Of course, the constitutional rights of Jackson and every other
 accused must be strictly enforced.  But a defendant cannot be permitted to
 manipulate the system simply by refusing to show up for trial.  Jackson has not established on this record that any of his constitutional rights have been
 violated.  To the contrary, we conclude that this record fully supports the
 trial courts finding that Jackson willfully and knowingly refused to appear at
 trial and waived his right to counsel and his right to be present at trial.  We
 also conclude that, under these circumstances, the trial court did not have a
 duty to readvise Jackson of the right to counsel or the perils of
 self-representation when it revoked Jacksons attorneys pro hac vice status
 because there was no indication that Jackson intended to proceed pro se or
 could not hire another attorney.

Id. at 497-98.  The Court concluded by
 stating, [w]e cannot expect a trial court to hunt down a defendant to admonish
 him about the dangers and disadvantages of self-representation if the defendant
 has made no indication to the trial court that he intends to proceed pro se and
 then subsequently does not show up for trial.  Id. at 501.
We believe our decision is also consistent with case law in this state
 where our appellate courts have found a defendants conduct constituted a
 waiver of his right to counsel.  See State v. Cain, 277 S.C. 210,
 210-11, 284 S.E.2d 779, 779 (1981) (inferring waiver of counsel and affirming
 defendants conviction and sentence where defendant, who was tried in absentia
 and without counsel for third-offense driving under the influence, failed to
 fulfill the conditions of his appearance bond and neglected to keep in contact
 with his attorney despite knowing the trial was imminent); see also State v. Jacobs, 271 S.C. 126, 126-28, 245 S.E.2d 606, 607-08 (1978)
 (inferring defendant waived his right to counsel where:  (1) trial court
 allowed defendant, a non-indigent, reasonable time to retain counsel; (2) trial
 court urged defendant on several occasions to retain counsel and provided
 defendant access to a telephone and additional time to make the arrangements;
 (3) defendant on the day of trial did not name his attorney; and (4) defendant
 failed to make a sufficient showing of reasons for his failure to have counsel
 present at trial); State v. Gill, 355 S.C. 234, 245, 584 S.E.2d 432,
 437-38 (Ct. App. 2003) (inferring defendant waived his right to counsel where
 defendant failed to retain counsel for trial despite his repeated assurances to
 the court that he intended to hire private counsel and did not require the
 appointment of a public defender). [3] 
Pride attempts to distinguish the above-referenced cases on the
 basis that the defendants in those cases were non-indigent.  We find this
 distinction to be unavailing.  Similar to the non-indigent defendants, Pride
 attempted to play the system in:  (1) refusing to retain counsel by the
 scheduled trial date; (2) giving repeated assurances to his court-appointed
 counsel and the prosecution up until the day of trial that he had retained a
 private attorney; and (3) failing to cooperate with his court-appointed counsel. 
 The fact that Pride may not have had the financial means to hire counsel has no
 bearing on our determination that Prides conduct was sufficient to constitute
 a waiver of the right to counsel.   Pride was appointed counsel, but
 voluntarily chose not to utilize assigned counsel despite his knowledge that he
 had not retained another attorney.  Cf. State v. Clay, 11 S.W.3d
 706, 713 (Mo. Ct. App. 1999) (holding indigent defendant tried in absentia and
 without counsel impliedly waived his right to counsel and, therefore, the
 statutory requirement for a written waiver of right to counsel was not required).
We emphasize that our decision is limited to the specific facts of
 this case.  Here, the constitutional mandates regarding a defendants right to the
 assistance of counsel were satisfied in that Pride was in fact appointed
 counsel.  Pride, however, willingly chose to disregard this appointment in an
 attempt to procure counsel of his own choosing up until the day of trial.  Because
 we cannot overturn our states prior precedent that a waiver of a right to
 counsel may be inferred by a defendants conduct, we reluctantly hold Prides
 conduct was sufficient to try him in absentia and without counsel.
Despite our holding, we take this opportunity to express our displeasure
 with the policy of permitting a defendant to be tried in absentia and without
 counsel.[4] 
 Because the right to counsel is such a fundamental right, we believe the more
 prudent policy would be for a trial judge to decline to relieve counsel immediately
 prior to trial if a defendant is being tried in absentia.
Accordingly, Prides convictions and sentences are
AFFIRMED.
HUFF, J., concurs.
ANDERSON, J., dissents in a separate opinion.
ANDERSON, J., dissenting
 in a separate opinion
The majority concludes that Prides conduct was
 sufficient to waive his right to counsel.  I DISAGREE and VOTE to REVERSE AND REMAND.   
 
FACTUAL/PROCEDURAL BACKGROUND
Pride was indicted
 for possession of crack cocaine with intent to distribute (PWID) and PWID
 within proximity of a school.  When his case was called for trial on October
 13, 2004, Pride was absent.  
Fletcher Smith, a
 private attorney, represented Pride on September 13, 2004, the first day of the
 term of court in which Prides case was originally scheduled for trial.  Smith
 moved to be relieved and the trial judge granted his motion.  Pride qualified
 for representation by the public defender, and William All was appointed.
 
On October 11,
 2004, Pride reported for roll call at the Union County courthouse, where he was
 arrested on another charge.  At that time he informed All that Smith would
 again represent him.  Pride allegedly intended to deliver $5000 to Smith after
 roll call.  
Pride was released
 from custody later that evening.  The next day All advised Pride that Smith
 needed to review the pre-trial motions the solicitor intended to make.  Pride
 told All that Smith would, in fact, appear at the courthouse.  Later All
 learned from Smiths office that Pride had attempted to retain Smith but had
 not tendered the full $5000 payment.  On the morning of trial, All discovered
 through the solicitors office that Smith did not represent Pride.
The solicitor moved
 to try Pride in his absence.  The trial judge asked All if he would like to
 move to be relieved as counsel.  All hesitated because of his ethical
 obligation to Pride, but he eventually made the motion for relief.  The trial
 judge found Pride waived his right to counsel by his conduct and granted Alls
 motion.  The trial proceeded in Prides absence, without counsel, and the jury
 convicted Pride of both charges.     
LAW/ANALYSIS
Pride contends the
 trial judge erred in concluding he waived his Sixth Amendment right to counsel
 by his conduct.  I agree. 
 The Sixth and Fourteenth Amendments of our
 Constitution guarantee that a person brought to trial in any state or federal
 court must be afforded the right to the assistance of counsel before he can be
 validly convicted and punished by imprisonment.  Faretta v. California, 422 U.S. 806, 807 (1975).  Of all the rights that an accused person has,
 the right to be represented by counsel is by far the most pervasive for it
 affects his ability to assert any other rights he may have.  United States v. Cronic, 466 U.S. 648, 654 (1984).  The courts indulge every
 reasonable presumption against waiver of fundamental constitutional rights and
 do not presume acquiescence in the loss of fundamental rights.  Johnson v.
 Zerbst, 304 U.S. 458, 464 (1938).  
A criminal
 defendant may waive his Sixth Amendment right to counsel.  See e.g., State
 v. Thompson 355 S.C. 255, 262, 584 S.E.2d 131, 134 (Ct. App. 2003); State
 v. Boykin, 324 S.C. 552, 556, 478 S.E.2d 689, 690 (Ct. App. 1996).  A
 waiver is an intentional and voluntary relinquishment of a known right.  Thompson 355 S.C. at 262, 584 S.E.2d at 134 (citing United States v. Goldberg, 67
 F.3d 1092, 1099 (3d Cir. 1995)).  The waiver of the right to counsel must be
 the product of a knowing, voluntary, and intelligent decision.  State v.
 Cabrera-Pena, 350 S.C. 517, 535, 567 S.E.2d 472, 482 (Ct. App. 2002). 
 When an accused manages his own defense, he relinquishes, as a purely factual
 matter, many of the traditional benefits associated with the right to counsel. 
 For this reason, in order to represent himself, the accused must knowingly and
 intelligently forgo those relinquished benefits.  State v. McLauren,
 349 S.C. 488, 493, 563 S.E.2d 346, 348 (Ct. App. 2002) (quoting Faretta,
 422 U.S. at 835).  

 Although
 a defendant need not himself have the skill and experience of a lawyer in order
 competently and intelligently to choose self-representation, he should be
 made aware of the dangers and disadvantages of self-representation, so that the
 record will establish that he knows what he is doing and his choice is made
 with eyes open. 

Id. (citing Adams v. U.S. ex rel. McCann, 317 U.S. 269, 279 (1942))  (emphasis supplied).  In order to effectuate a valid waiver of the
 right to counsel, the two-pronged Faretta test must be met in which the
 defendant is (1) advised of his right to counsel and (2) adequately warned of
 the dangers of self-representation.  Thompson 355 S.C. at 262, 584
 S.E.2d at 134 (citing Prince v. State, 301 S.C. 422, 423-24, 392 S.E.2d
 462, 463 (1990)).
Although waiver is
 most commonly understood as an affirmative verbal request, the intentional and
 voluntary relinquishment of the right to counsel may be inferred from a
 defendants conduct.  See  United States v. Goldberg, 67 F.3d
 1092, 1099 (3d Cir.1995);  State v. Roberson, 371 S.C. 334, 339, 638
 S.E.2d 93, 95 (Ct. App. 2006); Thompson, 355 S.C. at 262, 584 S.E.2d at
 134; State v. Gill, 355 S.C. 234, 245, 584 S.E.2d 432, 438 (Ct. App.
 2003); State v. Boykin, 324 S.C. 552, 556, 478 S.E.2d 689, 690 (Ct. App.
 1996).    
A defendants failure
 to appear at trial, however, is not, by itself, sufficient to sustain the
 inference that he intentionally and voluntarily relinquished his right to
 counsel.  See State v. Roberson, 371 S.C. 334, 339, 638
 S.E.2d 93, 95 (Ct. App. 2006).  Most courts have held the defendant must first
 be warned about conduct that may subsequently be treated as a waiver of
 counsel.  Boykin, 324 S.C. at 556, 478 S.E.2d at 691.  Moreover, to the
 extent that the defendants [conduct is] examined under the doctrine of
 waiver, there can be no valid waiver of the Sixth Amendment right to counsel
 unless the defendant also receives Faretta warnings.  Goldberg,
 67 F.3d at 1100 (citing United States v. Bauer, 956 F.2d 693 (7th Cir.
 1992; United States v. Allen, 895 F.2d 1577 (10th Cir. 1990)).  
The determination
 of whether there has been an intelligent waiver of right to counsel must
 depend, in each case, upon the particular facts and circumstances surrounding
 that case, including the background, experience, and conduct of the accused.  Reed
 v. Ozmint, 374 S.C. 19, 28, 647 S.E.2d 209, 214 (2007) (quoting Zerbst,
 304 U.S. at 464).  The trial judge is responsible for ensuring that the accused
 is informed of the dangers and disadvantages of self-representation and makes a
 knowing and intelligent waiver of the right to counsel.  State v. Brewer,
 328 S.C. 117, 119, 492 S.E.2d 97, 98 (1997); Cabrera-Pena, 350 S.C. at
 531, 567 S.E.2d at 480-81.
In the absence of
 specific inquiry on the dangers of proceeding without counsel, the requirements
 of a voluntary waiver will be satisfied if the record demonstrates the
 defendants decision to waive counsel was made with an understanding of the
 risks of self-representation.  Watts v. State, 347 S.C. 399, 402,
 556 S.E.2d 368, 370 (2001).  However, where the record fails to demonstrate the
 defendant made an informed choice to proceed pro se, with eyes open, then a
 knowing and voluntary waiver of counsel is not effectuated and the case should
 be remanded for a new trial.  Id. at 402-03, 556 S.E.2s at 370.
In Thompson and Roberson, this court declined to infer the defendants conduct
 constituted waiver of counsel because the court had not advised either
 defendant of the dangers of proceeding without representation. 355 S.C. 255,
 584 S.E.2d 131; 371 S.C. 334, 638 S.E.2d 93.  In Thompson, the defendant
 failed to appear for trial, although he appeared for roll call a number of
 times after his arrest.  355 S.C. at 260, 584 S.E.2d at 133.  He was tried in
 his absence, without counsel.  At sentencing, Thompson moved for a new trial
 because he was denied the right to counsel.  Thompson had not qualified
 financially for representation by the public defender, but he averred
 extenuating circumstances prevented his retaining private counsel.  In
 addition, he alleged inadequate notice of the trial date.  We reversed the
 trial judges denial of Thompsons motion, finding his failure to appear was
 insufficient to infer a valid waiver of his right to counsel.  Id. at 260, 584 S.E.2d at 134.  We premised our conclusion on the fact that Thompson
 had not been advised, under Faretta, of the dangers of proceeding
 without representation of counsel.  Moreover, the evidentiary record did not
 indicate that Thompson understood the dangers of self-representation. 
          Similarly, the
 defendant in Roberson was tried in his absence, without counsel, and
 convicted.  371 S.C. at 336, 638 S.E.2d at 94.  At sentencing he moved for a
 new trial on grounds he did not knowingly and voluntarily fail to appear for
 trial and he was denied his right to counsel.  Id.  The sentencing judge
 denied Robersons motion for new trial on the ground he was deprived of
 representation of counsel.  Id. at 337, 638 S.E.2d at 94.  We reversed
 and remanded for a new trial.  Because Roberson was not warned of the dangers
 of proceeding without counsel, the inference that his failure to appear
 constituted the intentional and voluntary relinquishment of his right to
 counsel was inappropriate.  Id. at 340, 638 S.E.2d at 96.  
The majority
 attempts to distinguish Thompson and Roberson from the case at
 bar, noting Thompson and Roberson were pro se defendants, while Pride was
 represented by appointed counsel.  The gist and gravamen of my dissonance with
 the majority is that Pride became a pro se in his absence without any notice
 whatsoever when the trial judge relieved Prides appointed counsel immediately
 before trial.  The trial judge prompted Prides attorney to make a motion to be
 relieved as counsel.  The attorney had obvious concernment in regard to his ethical
 obligations to Pride and voiced that position with some degree of certitude: 
 

 
 
 Court: 
 All Right . . . Mr. All,   
 where do you stand.  Do you wish to be, do you feel, I feel     
 that by his conduct you certainly have a right to move to be 
 relieved because he has not cooperated with you in any way 
 whatsoever and as has happened in other cases it appears that hes 
 sort of playing the attorney game so to speak and saying somebody 
 represents him and they say they dont; in any event, I certainly 
 feel very comfortable making a   finding hes    
 waived his right to counsel by his conduct and I am certainly not 
 going to put you in a position of sitting there trying a case 
 unprepared, particularly trying a case in someones absence when you 
 are, have not had adequate conversation with your client due to his 
 conduct.  So do you wish to, I know thats an awful position 
 for you to be in, but.
 
 
 
 All: 
 That is an awful position, Your 
 Honor.  I was sitting here trying, sitting here the last 30 
 minutes running through my mind what to ask the Court because I feel 
 an obligation in some manner to Mr. Pride even though hes failed to 
 fulfill anything in regards to the assistance and cooperation with 
 our office, Your Honor. 
 
 
 
 Court: 
 Well, let me interject and put 
 this in your thinking.  He has pretty much indicated he doesnt 
 want you to represent him because hes continued to say that he has 
 retained and either gone by their office and tried to pay another 
 lawyer yesterday, so I think you may need to factor in the fact that 
 if you sort of, I hate to say this kind of language in court but you 
 are sort of damned if you do and damned if you dont because if you 
 go forward then hell be saying he was represented by an attorney he 
 didnt want.  If you dont go forward hes going to say he 
 didnt have an attorney at all. 
 
 
 
 All:
 Well, Your Honor, I do make a 
 motion to be relieved as counsel.  Your Honor, I would ask that 
 before the Court starts the case with Mr. Pride that they have the 
 Sheriff or the Bailiff or someone call his name.  
 
 
 
 Court:
 Well do that.
 
 
 
 All:
 I will be staying basically on 
 stand by in case they find Mr. Pride and once they find him if he 
 indicates that he wants an attorney, if the Court feels fit to 
 appoint one, I will be here.  Im not going to disappear. 
 
 
 
 Court:
 All right.  Well, Im going 
 to relieve you of counsel.  I think it would be egregious for 
 the Court to require someone in this context who not only has not, 
 who has made a valiant attempt to get prepared and by his clients 
 conduct been unable to do what he needs to do to be ready for trial 
 and to put you in that spot would certainly not be fair.  And 
 its his conduct that has created the, he has sort of hoisted on his 
 own petard, he is a victim of his own conduct. . . .
 
 
 

The ruling of the
 trial judge judicially converted Pride from a represented defendant to a pro se
 defendant.  Irrefutably, the evidentiary record reveals that Pride desired
 representation by counsel.  Any ambivalence or equivocation by Pride related to
 the identity of his attorney, i.e. a hired attorney or the public defender. 
 Pride never indicated directly or indirectly that he desired to proceed pro
 se.  
Factually and
 legally the deprivation of an important constitutional right at this stage of
 the trial is troublesome and is infected with expository difficulty.  The
 judicial imprimatur and approbation placed by the majority upon the denial of
 this basic constitutional right at this temporal point in the trial is an
 improper circumspection of a defendants right to counsel as guaranteed by the South Carolina and United States Constitutions.
 
I hold the rule of
 law we applied in Thompson and Roberson is equally applicable
 here.  Under Faretta and its progeny, a defendant must be apprised of
 his right to representation and cautioned about the dangers of proceeding
 without representation before being convicted and imprisoned.  A valid waiver
 of counsel, either by affirmative, verbal request or by conduct, requires
 compliance with Faretta.  In re Christopher H., 359 S.C. 161,
 166-67, 596 S.E.2d 500, 503 (Ct. App. 2004).  The evidentiary record here is
 devoid of any indication the trial judge apprised Pride of his right to
 counsel, warned him of the dangers of proceeding without representation,
 determined he understood the dangers of self-representation, or cautioned him
 that his conduct may be treated as a waiver of counsel.  
Accordingly, I VOTE to REVERSE and REMAND for new trial. 
 

[1]  Miranda v. Arizona, 384 U.S. 436 (1966).
[2]   Although Pride was tried in his absence and without
 counsel, we believe Pride only challenges the waiver of his right to counsel. 
 Accordingly, we confine our analysis to this limited issue.  
[3]   Interestingly, the Indiana Supreme Court referenced Cain and Gill in its decision.  The Court, however, found that
 Jacksons case was different in that [n]one of the cases involved a defendant
 who appeared with a lawyer but then disappeared for trial, a clear finding by
 the trial court that the defendant willfully and voluntarily missed his own
 trial, and no suggestion that the defendant would not hire his own attorney. Jackson, 868 N.E.2d at 500-01.  We agree with this assessment and also find that
 Prides willful conduct surpassed the conduct in our states cases which was
 sufficient to constitute an implied waiver of the right to counsel.
[4]   We note that our research reveals very few
 published decisions where a trial court permits a defendant to be tried in
 absentia and without counsel.  Significantly, the majority of the cases which
 present this factual scenario arise out of proceedings in this states trial
 courts.  See State v. White, 305 S.C. 455, 409 S.E.2d 397 (1991); State v. Williams, 303 S.C. 410, 401 S.E.2d 168 (1991); State v. Cain,
 277 S.C. 210, 284 S.E.2d 779 (1981); State v. Fairey, 374 S.C. 92, 646
 S.E.2d 445 (Ct. App. 2007); State v. Roberson, 371 S.C. 334, 638 S.E.2d
 93 (Ct. App. 2006); City of Aiken v. Koontz, 368 S.C. 542, 629 S.E.2d
 686 (Ct. App. 2006); State v. Thompson, 355 S.C. 255, 584 S.E.2d 131
 (Ct. App. 2003); see also People v. McCombs, 866 N.E.2d 1200
 (Ill. App. Ct. 2007); People v. Gargani, 863 N.E.2d 762 (Ill. App. Ct.
 2007); Jackson v. State, 868 N.E.2d 494 (Ind. 2007); State v. Clay,
 11 S.W.3d 706 (Mo. Ct. App. 1999); Commonwealth v. Ford, 715 A.2d 1141
 (Pa. Super. Ct. 1998).  In light of the limited case law, we question whether
 our Supreme Court should, if given the appropriate factual circumstances,
 reconsider the policy apparently adopted at the trial court level.